SUPREME COURT OF ARIZONA
En Banc

| | |
|---|---|
| STATE OF ARIZONA, | ) Arizona Supreme Court |
| | ) No. CR-09-0133-AP |
| Appellee, | ) |
| | ) Maricopa County |
| v. | ) Superior Court |
| | ) No. CR2005-114414 |
| DONALD DAVID DELAHANTY, | ) |
| | ) |
| Appellant. | ) |
| | ) **O P I N I O N** |
| _____ | ) |

Appeal from the Superior Court in Maricopa County
The Honorable Warren J. Granville, Judge

**AFFIRMED**
_____

THOMAS C. HORNE, ARIZONA ATTORNEY GENERAL                Phoenix
     By   Kent Cattani, Chief Counsel
          Criminal Appeals/Capital Litigation Section
          Jeffrey A. Zick, Assistant Attorney General
Attorneys for State of Arizona

MICHAEL J. DEW                                          Phoenix
Attorney for Donald David Delahanty
_____

**H U R W I T Z**, Vice Chief Justice

¶1      Donald David Delahanty was convicted of first degree murder, attempted arson, conspiracy to commit first degree murder, and solicitation to commit first degree murder. He was sentenced to death for the murder and to prison terms for the other offenses. We have jurisdiction over his appeal under

Article VI, Section 5(3) of the Arizona Constitution and A.R.S. §§ 13-4031 and 13-4033(A)(1) (2010).[1]

## I. FACTS AND PROCEDURAL BACKGROUND[2]

**¶2**      On May 10, 2005, Delahanty shot Phoenix Police Officer David Uribe three times in the head and neck, killing him. Officer Uribe, driving a marked patrol car, had stopped a car driven by Christopher Wilson. Delahanty was in the front passenger seat of the car and John Armendariz sat in the back seat. As Wilson sped from the scene, Delahanty said "I just shot a cop"; "we got to burn the car." After Wilson stopped the car, Delahanty unsuccessfully attempted to destroy it by shooting its gas tank.

**¶3**      Delahanty and Wilson were charged with first degree murder. Wilson pleaded guilty to second degree murder and testified against Delahanty. While awaiting trial, Delahanty sent letters to a girlfriend seeking to have Wilson and Wilson's mother killed.

**¶4**      After conviction, Delahanty and the State waived a jury trial on aggravation. The trial judge found that Delahanty had been convicted of serious offenses committed on the same

---

[1]    This opinion cites the current version of statutes that have not materially changed since the events at issue.

[2]    We view the facts "in the light most favorable to upholding the verdicts." *State v. Chappell*, 225 Ariz. 229, 233 ¶ 2 n.1, 236 P.3d 1176, 1180 n.1 (2010).

2

occasion as the homicide, A.R.S. § 13-751(F)(2), and that the victim was a peace officer killed while performing official duties, A.R.S. § 13-751(F)(10).

¶5        Shortly after the penalty phase began, Delahanty sought to waive presentation of mitigation.  The trial judge appointed Dr. Bruce Kushner, a psychologist, to determine whether Delahanty was competent to do so.  After receiving Dr. Kushner's report, the court concluded that Delahanty had knowingly, intelligently, and voluntarily waived his right to present mitigation.  The jury subsequently determined that Delahanty should be sentenced to death.

## II.  ISSUES ON APPEAL

### A.  Prescreening Evaluation

¶6        The State filed its notice of intent to seek the death penalty in September 2005.  The trial court failed to order a competency prescreening, and Delahanty did not object or himself request one.  He now claims that the court erred in not ordering a competency prescreening.  Because Delahanty did not object below, he must show "both that fundamental error exists and that the error in his case caused him prejudice."  *State v. Henderson*, 210 Ariz. 561, 567 ¶ 20, 115 P.3d 601, 607 (2005).

¶7        When the State seeks the death penalty, A.R.S. § 13-754(A) provides that the superior court "shall appoint a psychologist or psychiatrist" to conduct a "prescreening

3

evaluation" to determine whether there is a reasonable basis to order further examination of the defendant's competence to stand trial. Because the statutory language is mandatory, *see State v. Harrod*, 218 Ariz. 268, 277 ¶ 28, 183 P.3d 519, 528 (2008), the superior court erred in not ordering an evaluation, *cf. State v. Armstrong*, 218 Ariz. 451, 458 ¶ 15, 189 P.3d 378, 385 (2008) (finding error in failure to order statutorily required mental retardation prescreening).

¶8        However, Delahanty cannot establish fundamental error. A competency hearing is required only if "on the basis of the facts and circumstances known to the trial judge, there was or should have been a good faith doubt about the defendant's ability . . . to participate intelligently in the proceedings." *State v. Cornell*, 179 Ariz. 314, 322-23, 878 P.2d 1352, 1360-61 (1994) (internal citation and quotation marks omitted); *see also Odle v. Woodford*, 238 F.3d 1084, 1087 (9th Cir. 2001) (finding competency hearing required if the evidence "raises a bona fide doubt about the defendant's competence to stand trial"). The critical inquiry is "whether [the defendant] has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding – and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam); *see also* Ariz. R. Crim. P. 11.1.

¶9      The record is replete with evidence that Delahanty understood the proceedings against him and was able to assist in his own defense.  Delahanty testified in a pre-trial hearing on a motion to dismiss, filed a *pro se* motion for "hybrid representation" on the attempted arson count, and spoke directly with the trial judge about an alleged conflict of interest with counsel.  The trial court observed Delahanty throughout the trial and characterized his behavior as "appropriate."

¶10      Delahanty nonetheless contends that the trial court's appointment of a psychologist in connection with his waiver of mitigation and the report of Dr. Joseph Wu submitted at sentencing on the non-capital counts raised a "bona fide doubt" as to his competence.  We disagree.  Before ordering Dr. Kushner to evaluate Delahanty, the trial court made clear that it had no doubts about Delahanty's ability to understand the proceedings, but simply wanted to make sure that he understood the consequences of the waiver.  *Cf. Godinez v. Moran*, 509 U.S. 389, 401 n.12 (1993) (noting that competency involves the defendant's general ability to understand proceedings, but "the purpose of the knowing and voluntary inquiry . . . is to determine whether the defendant actually *does* understand the significance and consequences of a particular decision") (internal quotation marks omitted)).  Dr. Kushner concluded that Delahanty

understood the consequences of waiving mitigation, and nothing in his report raised any doubt as to Delahanty's competence.

¶11     Nor does Dr. Wu's report suggest a contrary conclusion.  Dr. Wu opined that Delahanty suffered from physical trauma to the brain and that "brain damage of that nature reduces the ability of an individual to control impulsive violent urges."  Volatility, however, should not "be equated with mental incompetence to stand trial."  *Burket v. Angelone*, 208 F.3d 172, 192 (4th Cir. 2000).

¶12     Accordingly, Delahanty has failed to establish fundamental error.  We nonetheless caution all participants in a capital murder trial - defense counsel, the State, and the trial judge – that a competency prescreening is required unless waived, even when the defendant does not request one.

### B.     Cross-Examination on Psychiatric History

¶13     During a police interview several days after the shooting, Wilson said he had not been taking certain prescribed medications.  After reviewing this interview, the defense obtained Wilson's records from Correctional Health Services ("CHS").  These records indicate that Wilson told CHS staff that he had been diagnosed with schizophrenia in Indiana, but they do not contain an independent diagnosis of schizophrenia or a confirmation of any previous diagnosis.

6

¶14     The State moved in limine to preclude Delahanty from inquiring into Wilson's mental health history at trial, arguing that no evidence suggested that mental disease affected his ability to perceive and relate events and that discussing mental health would confuse and unduly prejudice the jury.  Delahanty responded, attaching an entry from the Diagnostic and Statistical Manual of Mental Disorders which stated that schizophrenia can cause delusions and hallucinations.

¶15     Delahanty supplemented the response with a report from Dr. George DeLong, a clinical psychologist, who noted that in the CHS records, Wilson "report[ed] that he has been diagnosed with Schizophrenia."  Dr. DeLong concluded, however, that Wilson's "use of drugs throughout his childhood and adult life confounds the ability of any practitioner to make a diagnosis of Schizophrenia as an independent illness in this case."  Dr. DeLong further noted that Wilson had "a number of conditions and/or symptoms that research conclusively demonstrates to negatively impact a person's abilities to attend, concentrate, and recall."

¶16     The trial court denied the motion in limine in part and granted it in part, stating as follows:

> The Court finds that the ability to perceive is always a relevant fact.  The Court also recognizes under [Rule] 403 issues of confusion.  The Court would allow either party to elicit that Mr. Wilson . . . had been prescribed medicine May 10th, 2005, and he was on it

7

> or not on it, and what he self perceives his ability to perceive was. The Court would not admit any testimony by any other lay person in terms of any diagnosis, effects of any particular medicine, but would allow any percipient witness to testify regarding the demeanor, ability to perceive of Mr. Wilson, during the relevant period . . . .
>
> There will be no evidence regarding schizophrenia. The Court finds insufficient proffer of what impact, if any, a diagnosis of schizophrenia has on a witness' ability to perceive or relate events.

During cross-examination, Wilson testified that he had stopped taking his medications a month before the murder because they were too expensive, but that his memory was not affected.

¶17    Delahanty contends that precluding evidence of Wilson's alleged schizophrenia denied him a fair trial. We review limitations on the scope of cross-examination for abuse of discretion. *State v. Zuck*, 134 Ariz. 509, 513, 658 P.2d 162, 166 (1982).

¶18    "Evidence of a witness's psychological history may be admissible when it goes to [his or] her credibility." *United States v. Sasso*, 59 F.3d 341, 347 (2d Cir. 1995). However, recognizing that "[m]any psychiatric problems do not affect a witness's credibility or capacity to observe and communicate," we have held that the psychiatric history of a witness may be excluded under Arizona Rule of Evidence 403 unless the proponent "make[s] an offer of proof showing how it affects the witness's ability to observe and relate the matters to which he

8

testifies." *Zuck*, 134 Ariz. at 513, 658 P.2d at 166 (upholding exclusion of evidence of paranoid schizophrenia). Some federal cases take a seemingly broader approach, suggesting that a schizophrenia diagnosis is generally admissible to attack a witness's credibility. *See, e.g.*, *United States v. Jimenez*, 256 F.3d 330, 343 (5th Cir. 2001) ("[T]he decisions of this and other circuits stand for the general principle that a diagnosis of schizophrenia . . . will be relevant, unless the diagnosis is too remote in time from the events alleged in the indictment.").

¶19 In this case, however, there was no diagnosis of schizophrenia presented. The only evidence in the record suggesting that Wilson suffered from schizophrenia was an unconfirmed statement he made to a CHS employee. Dr. Delong, a defense expert and the only mental health professional to address the issue, concluded that Wilson's history "*confounds the ability of any practitioner* to make a diagnosis of Schizophrenia." (Emphasis added.) Delahanty did not request an independent examination of Wilson. Moreover, although nothing in the trial court's order prevented Dr. DeLong from testifying about Wilson's alleged cognitive deficiencies, Delahanty chose not to call Dr. DeLong as an expert witness.

¶20 Wilson was subjected to lengthy cross-examination about his credibility, including extensive reference to his plea bargain. *See, e.g.*, *United States v. Rivera-Santiago,* 872 F.2d

9

1073, 1085 (1st Cir. 1989) (upholding trial court's exclusion of evidence of a witness's psychiatric evaluation when the witness "received a complete and thorough grilling by defense counsel on all matters that properly went to her credibility"). More importantly, Wilson was not the only eyewitness to the murder. His account was substantially similar to that of Armendariz. It thus seems quite unlikely that his testimony resulted from a schizophrenic delusion.

¶21    On this record, the trial court did not abuse its discretion by precluding Delahanty from mentioning schizophrenia during Wilson's cross-examination.

## C.    Lesser-Included Offense Instructions

¶22    Delahanty requested jury instructions on the lesser-included offenses of second degree murder, manslaughter, and negligent homicide. The trial court denied the request, stating that "there are no facts supporting any lesser included offense." We review for abuse of discretion. *State v. Wall*, 212 Ariz. 1, 3 ¶ 12, 126 P.3d 148, 150 (2006).

¶23    In a first degree murder trial, instructions for second degree murder, manslaughter, or negligent homicide are required when supported by the evidence. *State v. Dumaine*, 162 Ariz. 392, 403, 783 P.2d 1184, 1195 (1989), *disapproved on other grounds by State v. King*, 225 Ariz. 87, 90 ¶ 12, 235 P.3d 240, 243 (2010). "To determine whether sufficient evidence existed

10

to require a lesser-included offense instruction, [we] must examine whether the jury could rationally fail to find the distinguishing element of the greater offense." *State v. Bearup*, 221 Ariz. 163, 168 ¶ 23, 211 P.3d 684, 689 (2009) (internal quotation marks omitted).

¶24 Delahanty was convicted under A.R.S. § 13-1105(A)(3), which provides that a person commits first degree murder if, "[i]ntending or knowing that the person's conduct will cause death to a law enforcement officer, the person causes the death of a law enforcement officer who is in the line of duty." He contends that the jury should have been instructed on second degree murder both because he may have only intended to inflict serious physical injury, A.R.S. § 13-1104(A)(2), and because testimony about his "freaking out" during the traffic stop suggests that he only acted recklessly, A.R.S. § 13-1104(A)(3). He further argues that a manslaughter instruction was appropriate because of his "confused emotional state" and "panicked response to being stopped."

¶25 The evidence does not support Delahanty's contentions. Delahanty shot Officer Uribe three times at close range in the face and neck during a routine traffic stop, actions almost certain to bring about death. Officer Uribe was in full uniform and driving a marked police cruiser with its lights engaged. Delahanty undoubtedly knew he was shooting a police officer.

11

¶26 Moreover, Delahanty shot Officer Uribe after telling Armendariz that if he was ever pulled over by an officer, "I would shoot him, I would kill him," and after telling another friend that he would "shoot to kill when he got pulled over." Delahanty's previous statements did not suggest anything other than intent to kill. There was no evidence that Delahanty acted in a simply reckless manner. *Cf. State v. Ovind*, 186 Ariz. 475, 477, 924 P.2d 479, 481 (App. 1996) (finding killing committed "knowingly" when defendant threatened victim, shot him in the head, and left a note relating what she had done).

¶27 On this evidence, no rational jury could have found that Delahanty committed a lesser-included offense. Thus, the trial court did not err in declining the requested defense instructions.

D.  **Waiver of Mitigation**

¶28 After opening statements on the first day of the penalty phase, Delahanty's counsel told the trial judge that his client was "seriously considering" waiving mitigation. Counsel then requested a competency evaluation. The court stated that

> in the opening statements for the penalty phase, [defense counsel] had proffered that there will be at least three different expert witnesses testifying about mental health issues.
>
> Because of that, and solely because of that, and not because of any belief that you're not – your inability

12

to understand what's going on right now, the Court will order a Rule 11 examination of you.

¶29    The court then ordered Dr. Kushner to evaluate Delahanty. Based on Dr. Kushner's report, the court found Delahanty "competent to render any decision with respect to mitigation."

¶30    Delahanty now argues that the trial court erred because Arizona Rule of Criminal Procedure 11.3(a) requires the court to "appoint at least two mental health experts to examine the defendant and to testify regarding the defendant's mental condition" when it "determines that reasonable grounds for an examination exist." Delahanty did not raise this argument below, so we review for fundamental error.

¶31    Although the trial judge referred to Rule 11 when appointing Dr. Kushner, it is not clear that the appointment was made pursuant to that Rule. Rule 11.2(a) provides for an examination as to "whether a defendant is competent to stand trial." The superior court explicitly stated that it had no question as to Delahanty's competence, and plainly ordered the evaluation to determine whether he was acting knowingly and intelligently in waiving his right to present mitigation. *See Godinez*, 509 U.S. at 401 n.12 (noting distinction between competence to stand trial and competence to waive certain constitutional rights).

¶32    Even assuming the trial court did order a Rule 11 evaluation, there was no reversible error.  Under Rule 11.2(c), the court "may order that a preliminary examination be conducted pursuant to A.R.S. § 13-4503C to assist the court in determining if reasonable grounds exist to order further examination of the defendant."  Section 13-4503(C) in turn provides that "[t]he court may request that a mental health expert assist the court in determining if reasonable grounds exist for examining a defendant."  Further examination is required only when the court finds such "reasonable grounds."  Ariz. R. Crim. P. 11.3(a).

¶33    Dr. Kushner's examination was, at most, the functional equivalent of the "preliminary examination" contemplated by Rule 11.2(c) and § 13-4503(C).  His report did not suggest reasonable grounds for further examination.  Rather, he concluded that Delahanty understood "the implications" of waiving mitigation and was "able to rationalize his choice outside of any pathological thought processes."  Delahanty decided to waive mitigation, Dr. Kushner reported, because his family's participation would cause "more angst" and the penalty phase would be difficult for Officer Uribe's family.

¶34    The record amply supports the trial court's finding that Delahanty knowingly and intelligently waived mitigation. In addition to Dr. Kushner's report, the court had before it a written waiver, prepared by defense counsel and signed by

14

Delahanty, which fully outlined the mitigation evidence that could have been presented.

### E. Issues Raised to Avoid Federal Preclusion

¶35    To avoid preclusion, Delahanty raises eighteen issues that he states have been rejected in decisions by the Supreme Court of the United States or this Court.  These issues and the decisions Delahanty identifies as rejecting them are listed in the appendix to this opinion.

### F. Review of the Death Sentence.

¶36    Because the murder of Officer Uribe occurred after August 1, 2002, we review the death sentence to "determine whether the trier of fact abused its discretion in finding aggravating circumstances and imposing a sentence of death." A.R.S. § 13-756(A).  A finding of aggravating circumstances or the imposition of a death sentence is not an abuse of discretion if "there is any reasonable evidence in the record to sustain it."  *State v. Morris*, 215 Ariz. 324, 341 ¶ 77, 160 P.3d 203, 220 (2007) (internal quotation marks omitted).

¶37    The trial court did not abuse its discretion in finding aggravating circumstances.  Ample evidence supported the court's findings that Delahanty had been convicted of serious offenses, A.R.S. § 13-751(F)(2), and that Delahanty knew or should have known that the victim was an on-duty peace officer, A.R.S. § 13-751(F)(10).

15

¶38     Nor did the jury abuse its discretion in determining that death was the appropriate sentence.  We will not disturb the jury's decision if "any reasonable jury could have concluded that the mitigation established by the defendant was not sufficiently substantial to call for leniency."  *Morris*, 215 Ariz. at 341 ¶ 81, 160 P.3d at 220; *see* A.R.S. § 13-751(E).  Here, particularly given Delahanty's decision not to present mitigation evidence in the penalty phase, a reasonable jury could conclude that the mitigation was not sufficiently substantial to call for leniency.

## III. CONCLUSION

¶39     For the foregoing reasons, we affirm Delahanty's convictions and sentences.


_____
                Andrew D. Hurwitz, Vice Chief Justice

CONCURRING:


_____
Rebecca White Berch, Chief Justice


_____
W. Scott Bales, Justice


_____
A. John Pelander, Justice


_____
Robert M. Brutinel, Justice

16

**APPENDIX**

1. The death penalty is *per se* cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 186-87, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *State v. Salazar*, 173 Ariz. 399, 411, 844 P.2d 566, 578 (1992); *State v. Gillies*, 135 Ariz. 500, 507, 662 P.2d 1007, 1014 (1983).

2. Execution by lethal injection is cruel and unusual punishment. *State v. Hinchey*, 181 Ariz. 307, 315, 890 P.2d 602, 610 (1995).

3. The death statute is unconstitutional because it fails to guide the sentencing jury. *State v. Greenway*, 170 Ariz. 155, 164, 823 P.2d 22, 31 (1991).

4. The statute unconstitutionally fails to require either cumulative consideration of multiple mitigating factors or that the jury make specific findings as to each mitigating factor. *State v. Gulbrandson*, 184 Ariz. 46, 69, 906 P.2d 579, 602 (1995); *State v. Ramirez*, 178 Ariz. 116, 131, 871 P.2d 237, 252 (1994); *State v. Fierro*, 166 Ariz. 539, 551, 804 P.2d 72, 84 (1990).

5. Arizona's statutory scheme for considering mitigating evidence is unconstitutional because it limits full consideration of that evidence. *State v. Mata*, 125 Ariz. 233, 242, 609 P.2d 48, 57 (1980).

6. Arizona's death statute insufficiently channels the sentencer's discretion in imposing the death sentence. *State v. West*, 176 Ariz. 432, 454, 862 P.2d 192, 214 (1993); *Greenway*, 170 Ariz. at 162, 823 P.2d at 31.

7. Arizona's death statute is unconstitutionally defective because it fails to require the State to prove that death is appropriate. *Gulbrandson*, 184 Ariz. at 72, 906 P.2d at 605.

8. The prosecutor's discretion to seek the death penalty unconstitutionally lacks standards. *Salazar*, 173 Ariz. at 411, 844 P.2d at 578.

9. The Constitution requires a proportionality review of a defendant's death sentence. *Salazar*, 173 Ariz. at 416,844 P.2d at 583; *State v. Serna*, 163 Ariz. 260, 269-70, 787 P.2d 1056, 1065-66 (1990).

10. There is no meaningful distinction between capital and non-capital cases. *Salazar*, 173 Ariz. at 411, 844 P.2d at 578.

11. Applying a death statute enacted after the Supreme Court's decision in *Ring II* violates the *ex post facto* clauses of the federal and state constitutions and A.R.S. § 1-244. *Ring III*, 204 Ariz. at 545-47 ¶¶ 15-24, 65 P.3d at 926-928.

12. The death penalty is cruel and unusual because it is irrationally and arbitrarily imposed and serves no purpose that is not adequately addressed by life in prison. *State v. Pandeli*, 200 Ariz. 365, 382, ¶ 88, 26 P.3d 1136, 1153 (2001), *vacated on other grounds, Ring v. Arizona*, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); *State v. Beaty*, 158 Ariz. 232, 247, 762 P.2d 519, 534 (1988).

13. Arizona's death penalty statute is unconstitutional because it requires imposition of the death penalty whenever at least one aggravating circumstance and no mitigating circumstances exist. *Walton v. Arizona*, 497 U.S. 639, 648, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990); *State v. Miles*, 186 Ariz. 10, 19,918 P.2d 1028, 1037 (1996); *State v. Bolton*, 182 Ariz. 290, 310, 896 P.2d 830, 850 (1995). *State v. Tucker ("Tucker II")*, 215 Ariz. 298, 160 P.3d 177 (2007).

14. The death penalty is unconstitutional because it permits jurors unfettered discretion to impose death without adequate guidelines to weigh and consider appropriate factors and fails to provide principled means to distinguish between those who deserve to die or live. *State v. Johnson*, 212 Ariz. 425, 440 ¶ 69, 133 P.3d 735, 750 (2006).

15. The trial court improperly omitted penalty phase instructions that the jury could consider mercy or sympathy in evaluating the mitigation evidence and determining whether to sentence the defendant to death. *State v. Carreon*, 210 Ariz. 54, 70-71 ¶¶ 81-87, 107 P.3d 900, 916-17 (2005).

16. The jury instruction that required the jury to unanimously determine that the mitigating circumstances were "sufficiently substantial to call for leniency" violated the Eighth Amendment. *State v. Ellison*, 213 Ariz. 116, 139 ¶¶ 101-102, 140 P. 3d 899, 922 (2006).

17. The refusal to permit voir dire of prospective jurors regarding their views on specific aggravating and mitigating circumstances violates Appellant's rights under the Sixth and Fourteenth Amendments. *State v. Johnson*, 212 Ariz. 425, 440 ¶¶ 29-35, 133 P.3d 735, 750 (2006).

18. Refusing to instruct the jury or permit the introduction of evidence and argument regarding residual doubt violated Appellant's rights under the Sixth, Eighth and Fourteenth Amendments and Arizona law. *State v. Harrod (Harrod III)*, 218 Ariz. 268, 278-79 ¶¶ 37-39, 183 P.3d 519, 529-30 (2008); *State v. Garza*, 216 Ariz. 56, 70 ¶ 67, 163 P.3d 1006, 1020 (2007).