IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

————————

**STATE OF ARIZONA**,
*Appellee*,

*v.*

**AARON BRIAN GUNCHES**,
*Appellant*.

————————

No. CR-13-0282-AP
Filed September 1, 2016

————————

Appeal from the Superior Court in Maricopa County
The Honorable Joseph Kreamer, Judge
No. CR2003-038541
**AFFIRMED**

————————

COUNSEL:

Mark Brnovich, Arizona Attorney General, John R. Lopez IV, Solicitor General, Lacey Stover Gard, Chief Counsel, Capital Litigation Section, John Pressley Todd (argued), Special Assistant Attorney General, Phoenix, Attorneys for State of Arizona

Stephen J. Whelihan (argued), Deputy Public Advocate, Maricopa County Office of the Public Advocate, Phoenix; and Louise Stark, Deputy Public Defender, Maricopa County Office of the Public Defender, Phoenix, Attorneys for Aaron Brian Gunches

————————

VICE CHIEF JUSTICE PELANDER authored the opinion of the Court, in which CHIEF JUSTICE BALES and JUSTICES BRUTINEL, TIMMER, and BOLICK joined.

————————

VICE CHIEF JUSTICE PELANDER, opinion of the Court:

**¶1**  Aaron Brian Gunches was convicted of first degree murder and kidnapping and was sentenced to death. On appeal, we remanded for a new penalty phase trial on the murder conviction. *State v. Gunches* (*Gunches I*), 225 Ariz. 22, 27 ¶ 26, 234 P.3d 590, 595 (2010). A jury again returned a death verdict. This Court has jurisdiction over this automatic appeal pursuant to article 6, section 5(3), of the Arizona Constitution and A.R.S. §§ 13-755 and 13-4031. We affirm.

## I. BACKGROUND

**¶2**  Gunches was charged with the first degree murder and kidnapping of Ted Price committed in late 2002. The State noticed its intent to seek the death penalty. After the trial court found Gunches competent to stand trial and to waive his right to counsel, Gunches chose to represent himself. He later pleaded guilty to both counts.

**¶3**  During the aggravation phase, Gunches stipulated that he had been convicted of a serious offense (attempted murder), which is an aggravating circumstance under A.R.S. § 13-751(F)(2). The jury also found as an aggravating circumstance under § 13-751(F)(6) that Gunches committed the murder in an especially heinous or depraved manner. Gunches presented virtually no mitigation evidence in the penalty phase, but he did request leniency in allocution. The jury determined that he should be sentenced to death.

**¶4**  On direct appeal, this Court affirmed Gunches's convictions and the kidnapping sentence. *Gunches I*, 225 Ariz. at 27 ¶ 26, 234 P.3d at 595. Concluding that the jury's finding of the (F)(6) aggravating factor was error, however, we vacated Gunches's death sentence and remanded for a new penalty phase proceeding. *Id.* On remand, Gunches again waived his right to counsel and decided to not present any mitigation evidence. He did not request leniency in allocution. Again, the jury determined that

2

Gunches should be sentenced to death. His automatic appeal to this Court followed.[1]

## II. DISCUSSION

### A. Self-Representation in the Penalty Phase

**¶5**     Gunches argues that the trial court fundamentally erred in allowing him to represent himself during the penalty phase on remand. We are unpersuaded and find no error, let alone fundamental error. *See State v. Henderson*, 210 Ariz. 561, 568 ¶ 23, 115 P.3d 601, 608 (2005) (under fundamental error standard of review, defendant "must first prove error").

**¶6**     The Sixth Amendment to the United States Constitution states, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the assistance of counsel for his defense." Under both the federal and Arizona constitutions, a defendant has a right to waive representation by counsel. *State v. Dann*, 220 Ariz. 351, 359 ¶ 13, 207 P.3d 604, 612 (2009) (citing U.S. Const. amends. VI, XIV; Ariz. Const. art. 2, § 24); *see also Faretta v. California*, 422 U.S. 806 (1975) (recognizing a defendant's Sixth Amendment right to conduct his own defense). In *Faretta*, the Court held that the Sixth Amendment grants the concomitant right to self-representation in a state criminal trial. 422 U.S. at 807. It noted that the amendment's "language and spirit" implied a right to self-representation, and that counsel was to "be an aid to a willing defendant—not an organ of the State interposed between an unwilling defendant and his right to

---

[1]     Gunches is represented by counsel in this automatic appeal from his death sentence. Although some of counsel's arguments are inconsistent with the positions Gunches took in the trial court, we are statutorily obligated to review the death sentence by considering the arguments now made in this Court. *See* A.R.S. § 13-755(A) ("The supreme court shall review all death sentences."); *cf. State v. Brewer*, 170 Ariz. 486, 494, 826 P.2d 783, 791 (1992) (holding that a capital defendant "may neither circumvent nor restrict the mandatory appeal to this court provided for him pursuant to the state's capital-sentencing procedures").

defend himself personally." *Id.* at 819–20. Further, the Court pointed out that "the colonists and the Framers, as well as their English ancestors, always conceived of the right to counsel as an 'assistance' for the accused, to be used at his option, in defending himself." *Id.* at 832.

¶7        This Court has repeatedly recognized a competent capital defendant's Sixth Amendment right to self-representation during the sentencing phase. *See, e.g.*, *State v. Dixon*, 226 Ariz. 545, 556 ¶ 62, 250 P.3d 1174, 1185 (2011); *State v. Bearup*, 221 Ariz. 163, 173 ¶ 56, 211 P.3d 684, 694 (2009); *Dann*, 220 Ariz. at 358 ¶ 10, 207 P.3d at 611; *State v. Kayer*, 194 Ariz. 423, 436 ¶ 44, 984 P.2d 31, 44 (1999); *State v. Henry* (*Henry II*), 189 Ariz. 542, 550, 944 P.2d 57, 65 (1997); *State v. Henry* (*Henry I*), 176 Ariz. 569, 585, 863 P.2d 861, 877 (1993); *State v. Williams*, 166 Ariz. 132, 134, 800 P.2d 1240, 1242 (1987); *State v. Harding*, 137 Ariz. 278, 291, 670 P.2d 383, 396 (1983). Our position is consistent with that of the United States Supreme Court and several other jurisdictions. *See, e.g.*, *Price v. Johnston*, 334 U.S. 266, 285 (1948), abrogated in part by *McCleskey v. Zant*, 499 U.S. 467 (1991); *Adams v. United States ex rel. McCann*, 317 U.S. 269, 279–80 (1942); *Snyder v. Massachusetts*, 291 U.S. 97, 106 (1934); *United States v. Davis*, 285 F.3d 378, 384 (5th Cir. 2002); *Silagy v. Peters*, 905 F.2d 986, 1007 (7th Cir. 1990); *United States v. Plattner*, 330 F.2d 271, 274 (2d Cir. 1964); *California v. Blair*, 115 P.3d 1145, 1177 (Cal. 2005); *Illinois v. Coleman*, 660 N.E.2d 919, 937 (Ill. 1995); *Sherwood v. Indiana*, 717 N.E.2d 131, 135 (Ind. 1999); *South Carolina v. Brewer*, 492 S.E.2d 97, 99 (S.C. 1997).

¶8        As long as the defendant "knowingly, intelligently, and voluntarily waived his right to counsel," he may properly "represent[] himself during the penalty phase." *Bearup*, 221 Ariz. at 173 ¶ 56 n.3, 211 P.3d at 694 n.3. These conditions were met at Gunches's first trial, *Gunches I*, 225 Ariz. at 24-25 ¶¶ 8-12, 234 P.3d at 592-93, and again at his penalty phase retrial.

¶9        After repeatedly finding Gunches competent, the trial court granted his request to represent himself during the penalty phase. (Gunches has not challenged the trial court's competency findings.) The court, however, expressed its concern that Gunches was not attempting to

4

avoid the death penalty. Against the strong advice of the court and counsel, Gunches nonetheless insisted on representing himself.

**¶10** Gunches first argues that a capital case's penalty phase is not a "criminal prosecution," and therefore the Sixth Amendment right to self-representation does not apply during that phase. We disagree. The Sixth Amendment right to counsel extends to all critical stages of the criminal process. *Iowa v. Tovar*, 541 U.S. 77, 80–81 (2004); *State v. Moody*, 208 Ariz. 424, 445 ¶ 65, 94 P.3d 1119, 1140 (2004). And "[a] capital trial comprises just one trial, divided into guilt and sentencing phases, and has always been understood as such, by this court and by the U.S. Supreme Court." *State v. Ring*, 204 Ariz. 534, 554 ¶ 50 n.19, 65 P.3d 915, 935 n.19 (2003). Conversely, a capital defendant's right to self-representation exists from arraignment through the direct appeal. *See State v. Lamar*, 205 Ariz. 431, 435-36 ¶ 22, 72 P.3d 831, 835-36 (2003) (acknowledging a defendant's right to self-representation under the Arizona Constitution as beginning before the jury is empaneled); *see also Coleman v. Johnsen*, 235 Ariz. 195, 196 ¶ 1, 330 P.3d 952, 953 (2014) (recognizing a defendant's right to self-representation on appeal pursuant to the Arizona Constitution).

**¶11** Gunches's reliance on *State v. McGill* is misplaced because there, this Court narrowly and specifically held that the Sixth Amendment's Confrontation Clause does not apply to rebuttal testimony at a capital sentencing hearing. 213 Ariz. 147, 158-59 ¶¶ 47-52, 140 P.3d 930, 941-42 (2006); *see Crawford v. Washington*, 541 U.S. 36 (2004) (interpreting the Confrontation Clause). Our reasoning that "the penalty phase is not a criminal prosecution," *McGill*, 213 Ariz. at 159 ¶ 52, 140 P.3d at 942, did not involve or address the well-established right to self-representation during sentencing. Since *McGill*, this Court (including in *Gunches I*) has upheld a capital defendant's waiver of counsel for his resentencing proceeding, noting that "[s]elf-representation is a 'fundamental constitutional right.'" *Dann*, 220 Ariz. at 359 ¶ 16, 207 P.3d at 612 (quoting *Montgomery v. Sheldon*, 181 Ariz. 256, 259, 889 P.2d 614, 617 (1995)); *see also Dixon*, 226 Ariz. at 556 ¶ 62, 250 P.3d at 1185; *Bearup*, 221 Ariz. at 173 ¶ 56, 211 P.3d at 694. *McGill* does not alter our conclusion that the Sixth Amendment right to have or waive counsel applies to capital sentencing proceedings. *Cf. Betterman v. Montana*, 136 S. Ct. 1609, 1613 & n.2 (2016) (holding that the Sixth

Amendment's Speedy Trial Clause "detaches upon conviction," but reserving the question of whether that clause "applies to bifurcated proceedings" such as capital cases, and not addressing a defendant's constitutional right to waive counsel).

¶12        Gunches also asserts that the State's interest in the fairness and reliability of the penalty phase precluded his self-representation.  He argues "the independent societal interest in the fair administration of justice has been found to outweigh even the right of the accused to counsel of his choice enshrined in the Sixth Amendment," citing *Wheat v. United States*, 486 U.S. 153 (1988).  But *Wheat* dealt with a defendant's attempt to circumvent a bright-line rule: he attempted to waive a conflict of interest in order to be represented by the same counsel who represented a co-defendant.  *Id.* at 154–55.  We have no such issue here.

¶13        Additionally, Gunches argues the trial court granted his motion on its mistaken belief that the reason for Gunches's request to self-represent was immaterial to the court's exercise of discretion.  In support, he cites *State v. De Nistor*, 143 Ariz. 407, 412-13, 694 P.2d 237, 242-43 (1985) (including "the reasons for the defendant's request" among factors trial court should consider in ruling on untimely request to waive counsel during trial).  But unlike the defendant's untimely request in *De Nistor*, Gunches's timely, valid waiver of counsel, though certainly ill-advised, did not disrupt "the orderly administration of the judicial process."  *Id.* at 413, 694 P.2d at 243.  Gunches's known or unknown motives for self-representation did not preclude the court from constitutionally accepting his waiver of counsel.  *See Barker v. Wingo*, 407 U.S. 514, 525 (1972) (describing waiver as "an intentional relinquishment or abandonment of a known right or privilege") (internal quotations omitted).

¶14        Other Arizona capital defendants have exercised their fundamental constitutional right to self-representation in capital sentencing proceedings. *See supra*, ¶ 7.  Recognizing and honoring that right, this Court has upheld a capital defendant's waiver of counsel even when, as here, the defendant "presented no mitigating evidence."  *State v. Cook*, 170 Ariz. 40, 46-47, 48, 63, 821 P.2d 731, 737-38, 739, 754 (1991).  So too have other courts. *See Blair*, 115 P.3d at 1177; *Ohio v. Jordan*, 804 N.E.2d 1, 13-14 (Ohio 2004);

*Utah v. Arguelles*, 63 P.3d 731, 752-53 (Utah 2003). Accordingly, we find unpersuasive Gunches's argument that *Faretta* only "pertains to the 'right to make a defense'" and does not compel a trial court to accept a capital defendant's waiver of counsel for the penalty phase, particularly when the defendant plans to present no mitigation evidence or argument. But even if the trial court was not required to allow Gunches to represent himself, the court did not err in accepting his knowing and voluntary waiver of representation by counsel.

## B. Waiver of Mitigation Evidence

**¶15** Gunches argues the trial court erred by permitting him to waive the presentation of mitigation evidence. We review this claim for fundamental error and find none. *Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607.

**¶16** Despite concerns raised by the trial court, advisory counsel, and the prosecutor, Gunches chose to not call any witnesses or present any mitigation evidence. In his closing argument, Gunches acknowledged that he had pleaded guilty in this case, had a prior felony conviction for "attempted murder on a cop," and did not "have any mitigation." He asked the jury only to base its decision on the evidence presented, follow the court's instructions, and not delay in reaching a verdict.

**¶17** "A defendant may waive mitigation if he is competent and makes the decision knowingly, intelligently, and voluntarily." *State v. Hausner*, 230 Ariz. 60, 84 ¶ 116, 280 P.3d 604, 628 (2012); *see also State v. Goudeau*, 239 Ariz. 421, 473 ¶ 240, 372 P.3d 945, 997 (2016). It is undisputed that Gunches was competent and knowingly and voluntarily waived his right to present mitigation. Before accepting the waiver, the trial court correctly followed the procedures prescribed in *Hausner*, 230 Ariz. at 86 ¶ 122, 280 P.3d at 630. *See also State v. Joseph*, 230 Ariz. 296, 300 ¶¶ 20-21, 283 P.3d 27, 31 (2012) (reiterating the *Hausner* requirements for a defendant's waiver of the right to present mitigation evidence: that the defendant "(1) understands what mitigation is, the right to present mitigation evidence, and the consequences of waiving that right, and (2) makes the decision voluntarily"); *cf. Blystone v. Pennsylvania*, 494 U.S.

299, 306-08 & n.4 (1990) (finding defendant's death sentence constitutional despite his having presented no mitigation evidence).

¶18      In addition, having voluntarily chosen to "present[] virtually no mitigation evidence during the penalty phase" at his first trial, *Gunches I*, 225 Ariz. at 24 ¶ 6, 234 P.3d at 592, Gunches was familiar with the process, yet voluntarily made that same choice at his sentencing retrial.  He was well aware of the penalty phase process, his constitutional right and opportunity to present mitigation, and the adverse consequences of foregoing that right. Before trial, advisory counsel outlined in open court the mitigation evidence they would have presented had Gunches not waived counsel. During trial, Gunches specifically acknowledged and reaffirmed that he chose to waive mitigation.

¶19      The trial judge specifically explained the possible consequences of Gunches's failure to inform the jurors (either in Gunches's closing arguments or by objecting to the prosecutor's statement in closing that there was no mitigation) that his earlier guilty plea in this case could be deemed mitigation evidence.  Nonetheless, the retrial jury was aware of Gunches's prior guilty plea, inasmuch as the prosecutor told the jurors in his opening statement that Gunches had pleaded guilty, a fact Gunches acknowledged in his closing argument.   In addition, the Juror Questionnaire given to each potential juror before trial stated that, "[i]n this case, the Defendant has pled guilty to the crime of First Degree Murder."

¶20      Gunches essentially asks us to revisit and overturn our prior decisions permitting competent capital defendants to knowingly and voluntarily waive or otherwise control the presentation of mitigation.  *See, e.g., Goudeau*, 239 Ariz. at 473-74 ¶¶ 240-46, 372 P.3d at 997-98; *Joseph*, 230 Ariz. at 300 ¶ 20, 283 P.3d at 31; *Hausner*, 230 Ariz. at 84-85 ¶ 116, 280 P.3d at 628-29; *State v. Murdaugh*, 209 Ariz. 19, 33 ¶ 70, 97 P.3d 844, 858 (2004) (stating that "[a] defendant may waive the presentation of mitigation if he is legally competent to do so"); *Kayer*, 194 Ariz. at 437 ¶ 46, 984 P.2d at 45 (stating that a defendant has the "freedom not to cooperate with a mitigation specialist and thereby potentially limit the mitigation evidence that is offered"); *State v. Roscoe*, 184 Ariz. 484, 499, 910 P.2d 635, 650 (1996) (stating that it is the defendant's "personal decision not to present certain

mitigating evidence"). He presents no compelling reason for this Court to do so. The trial court did not err in accepting Gunches's valid waiver of mitigation.

## C. Legal Sufficiency of the (F)(2) Aggravator

¶21 After murdering the victim in November 2002, Gunches was arrested in La Paz County for shooting at a Department of Public Safety ("DPS") officer in January 2003. A year later, before the first trial in this case, Gunches pleaded no contest to the charge of attempted murder in the La Paz case (the "La Paz conviction"). In the aggravation phase of the first trial in this case, Gunches stipulated that he had previously been convicted of a serious offense (the La Paz conviction), which the jury then found to be an aggravating circumstance under § 13-751(F)(2).

¶22 Gunches first raised the issue concerning the legal sufficiency of his prior conviction as an (F)(2) aggravator before the resentencing proceeding ordered in *Gunches I* began. On remand, before Gunches waived his right to counsel, his then-counsel moved to strike the State's allegation that Gunches had been previously convicted of a serious offense, arguing that the La Paz no contest plea was obtained in violation of Gunches's constitutional rights. In an affidavit supporting the motion, the attorney who represented Gunches in the La Paz case averred that when advising Gunches on the proposed plea agreement, he incorrectly told Gunches that the State would not be able to use a conviction in that case to render him eligible for the death penalty in this case.

¶23 The trial court denied Gunches's motion to strike, reasoning that although a defendant may attack the validity of a prior conviction, he must do so in the action that resulted in the allegedly infirm conviction, not via collateral attack in a separate case. The court of appeals declined jurisdiction over Gunches's special action petition challenging that ruling. After waiving counsel and representing himself in the penalty phase retrial, Gunches again stipulated to his La Paz conviction as an (F)(2) aggravating factor. The prosecutor told the jurors, without objection, that the parties had stipulated to the (F)(2) aggravator, and a trial exhibit confirmed that stipulation.

9

¶24 Gunches argues that the trial court erred in refusing to address his challenge to the legal sufficiency of the (F)(2) aggravating circumstance found by the jury in his first trial, the sole aggravator (after *Gunches I*) that rendered him eligible for the death sentence. For several reasons, we find no error.

¶25 First, this issue is procedurally defaulted. Gunches did not challenge or otherwise object to the validity of the La Paz conviction before or during his first trial; in fact, he stipulated to it. *Gunches I*, 225 Ariz. at 24 ¶ 6, 234 P.3d at 592. Nor did Gunches raise this issue in his first direct appeal to this Court, which resulted in our remand of the case solely for a new penalty phase trial, not to revisit issues relating to the aggravation phase or the (F)(2) aggravator. *Id* at 27 ¶ 26, 234 P.3d at 595.

¶26 The pretrial motion of Gunches's former counsel on remand to strike the noticed (F)(2) aggravator did not negate Gunches's prior stipulation. And after waiving counsel on remand, Gunches again stipulated to the prior conviction without challenging its validity. *See State v. Sorrell*, 109 Ariz. 171, 173, 506 P.2d 1065, 1067 (1973) (noting that stipulations are binding on the parties); *cf. State v. Allen*, 223 Ariz. 125, 127 ¶ 11, 220 P.3d 245, 247 (2009) ("Although stipulations may bind the parties and relieve them of the burden of establishing the stipulated facts, stipulations do not bind the jury, and jurors may accept or reject them."). By stipulating to the La Paz conviction and confirming its use as an (F)(2) aggravator for sentencing purposes, Gunches is foreclosed from now challenging in this case that prior conviction's validity or the jury's finding of that aggravating circumstance in the first trial. *United States v. Laslie*, 716 F.3d 612, 615 (D.C. Cir. 2013) (citing *United States v. Harrison*, 204 F.3d 236, 240 (D.C. Cir. 2000), for the proposition that a court "will not review a belated challenge on an issue a party agreed not to dispute in sentencing proceedings below"); *see United States v. Jackson*, 346 F.3d 22, 24 (D.C. Cir. 2003) (holding that the defendant waived his challenge to a four-level enhancement by expressly conceding that it applied to his offense).

¶27 Second, Gunches's argument is untimely. In a capital case, "[a] defendant may challenge the legal sufficiency of an alleged aggravating circumstance by motion filed pursuant to Rule 16." Ariz. R. Crim. P. 13.5(c);

*see also Chronis v. Steinle*, 220 Ariz. 559, 208 P.3d 210 (2009). Rule 16 authorizes pretrial motions, which "shall be made no later than 20 days prior to trial, or at such other time as the court may direct." Ariz. R. Crim. P. 16.1(b). Although the State timely and properly noticed the (F)(2) aggravator (based on the La Paz conviction) before the first trial, Gunches did not challenge that under Rule 13.5(c) or otherwise. Rather, he first moved to strike the (F)(2) aggravator before the penalty phase retrial, long after the State had noticed that aggravator, and well after Gunches knew of any infirmities in the prior conviction. Thus, that motion was untimely.

**¶28**     Even if the motion to strike was not procedurally defaulted and time barred, however, the trial court did not err in denying it. The court correctly reasoned that Gunches could not contest in this case the legal sufficiency of his prior conviction; rather, Gunches must dispute the validity of that conviction via a Rule 32 claim of ineffective assistance of counsel in the La Paz case. *State v. Cropper*, 205 Ariz. 181, 185 ¶¶ 19-20, 68 P.3d 407, 411 (2003) (holding that a capital defendant cannot collaterally attack in the capital case the validity of a prior conviction from another case, but rather must do so directly through post-conviction relief procedures in the other case). *Cropper* is not materially distinguishable and controls here.

**¶29**     Nor do the cases on which Gunches relies support his position. Although *Chronis* held that a defendant is entitled to request a probable cause hearing and determination regarding an alleged aggravating factor, 220 Ariz. at 562 ¶¶ 15, 18, 208 P.3d at 213, *Chronis* does not authorize a post-trial, collateral attack on a prior, unchallenged conviction entered in another case, after it has been found by the jury to be an aggravating factor. *Cf. State v. Nordstrom*, 230 Ariz. 110, 117 ¶ 28, 280 P.3d 1244, 1251 (2012) (noting that Rule 13.5(c) does not entitle a capital case defendant to an adjudication and determination of the "'legal sufficiency'" of an aggravator under A.R.S. § 13-751(F)(1)).

**¶30**     *State v. Cornell*, 179 Ariz. 314, 878 P.2d 1352 (1994), also does not help Gunches. There, this Court recognized the longstanding principle that constitutionally infirm convictions cannot be used to enhance charges or sentences in later proceedings. *Id.* at 334, 878 P.2d at 1372. In *Cornell*, however, the prior conviction that served as an aggravator was reversed in

a proceeding in the other (aggravated assault) case, so it was necessary to reweigh the death sentence in light of the reversal of the prior conviction. *Id.* That is not the situation here.

**¶31** Gunches also cites *State v. McCann*, in which this Court held that "a rebuttable presumption of regularity attaches to prior convictions used to enhance a sentence or as an element of a crime." 200 Ariz. 27, 28 ¶ 1, 21 P.3d 845, 846 (2001). In our "limited" holding in that case, *id.* at 31 ¶ 16, we determined that the state must first prove the existence of a prior conviction that it plans to use as a sentence enhancer or as an element of the crime, and if the defendant presents credible evidence to overcome the presumption of regularity attached to the final judgment, the state must prove that the prior conviction was constitutionally obtained. *Id.* at 31 ¶ 15, 21 P.3d at 849. *McCann* does not procedurally authorize Gunches's challenge in this case to his La Paz conviction, and to the extent it suggests he could do so, that language in *McCann* is dicta. In addition, after *McCann*, *Cropper* specifically rejected the type of collateral attack Gunches makes here. *Cropper*, 205 Ariz. at 185 ¶¶ 18-20, 68 P.3d at 411.

**¶32** In sum, the trial court's denial of Gunches's motion to strike the (F)(2) aggravator is consistent with *Cropper*, *Cornell*, and Rule 13.5(c). The court did not err in that ruling.

## D. Response to Jury Question During Deliberations

**¶33** During its penalty phase deliberations, the jury sent the following question to the trial court:

> If the two cases were tried in reverse order, i.e., the Ted Price murder first, then the attempted murder of the DPS officer, would the state still be seeking the death penalty?

Without objection, the trial court answered that the order of the cases has no legal significance.

**¶34** Gunches argues that the trial court fundamentally erred by responding to the jurors' question with an incorrect statement of the law that prohibited them from considering a circumstance that was a valid basis

12

for leniency. Gunches has not established error, let alone fundamental error. *Henderson*, 210 Ariz. at 567 ¶ 19, 115 P.3d at 607.

**¶35** After *Gunches I*, the (F)(2) prior conviction was the only aggravating factor that rendered Gunches eligible for the death penalty. He argues that the trial court's response to the jury's question was legally incorrect because the State could not have sought the death penalty under § 13-751(F)(2) had this case been tried before his conviction in the La Paz case, that is, had the cases been tried in the chronological order of the charged offenses in each case.

**¶36** The trial court's answer, although somewhat unresponsive to the jury's question, did not misstate the law. The order of the cases was not legally relevant because, at the time of the penalty phase, Gunches had stipulated to the La Paz conviction. The jury's question necessarily required the trial court to either reject it as irrelevant (as the court did), or entertain a hypothetical scenario (a reversal of the order of the cases) that was factually incorrect and could not come to pass. Thus, the court correctly answered that the order of the cases was not relevant, as the inquiry should not have factored into the jury's deliberations. In addition, to the extent the jurors' question implicitly inquired whether the State would have sought the death penalty absent the La Paz conviction, that too was irrelevant and would have called for speculation.

**¶37** Even if the trial court's response misstated the law, however, it would not be grounds to vacate Gunches's death sentence because he has not shown prejudice. *Henderson*, 210 Ariz. at 567 ¶ 20, 115 P.3d at 607 (defendant asserting fundamental error must establish that error "caused him prejudice"). The jurors were not prohibited from considering as a mitigating factor the order of the offenses in determining an appropriate sentence. The court instructed the jury:

> In reaching a reasoned, moral judgment about which sentence
> is justified and appropriate, you must decide how compelling
> or persuasive the totality of the mitigation is when compared
> against the totality of the aggravating factor and the facts and
> circumstances of the case. This assessment is not a
> mathematical one, but instead must be made in light of each

juror's individual, qualitative evaluation of the facts of the case, the severity of the aggravating factor, and the quality of the mitigating factors found by each juror.

In sum, Gunches has not carried his burden of establishing that the trial court's response to the jurors' question resulted in fundamental error.

## E. Prosecutorial Misconduct

**¶38** In his closing argument, Gunches told the jury, "I don't have any mitigation. I am not going to present any." The prosecutor then told the jury in his closing:

> You know also from your instructions the burden to prove the existence of mitigating circumstances is the defendant's. There has been no mitigation presented to you. There's no mitigation as to the defendant's character, propensity, history, record and there is certainly no mitigation in the awful and ugly circumstances of Ted Price's death.

Gunches's rebuttal closing argument did not suggest any mitigation. Later, when discussing (outside of the jury's presence) his failure to tell the jurors that they could consider his guilty plea as evidence that he accepted responsibility, Gunches told the court, "I don't feel it [the guilty plea] is a mitigating factor. . . . I didn't do it as a mitigating factor but it has been considered as a mitigating factor."

**¶39** Gunches argues that his guilty plea is evidence of acceptance of responsibility, a recognized mitigating circumstance, and therefore the prosecutor's assertion during closing argument constituted a misstatement of law, *Busso-Estopellan v. Mroz*, 238 Ariz. 553, 554 ¶ 6, 364 P.3d 472, 473 (2015), and fundamental error as it deprived Gunches of a fair trial.

**¶40** "A prosecutor may make arguments and may draw inferences that are reasonably supported by the evidence." *State v. Burns*, 237 Ariz. 1, 32 ¶ 152, 344 P.3d 303, 334 (2015). Gunches neither objected to nor rebutted the prosecutor's statement that no mitigation evidence was presented. That was not a misstatement inasmuch as Gunches expressly

acknowledged that fact in his closing and chose to not present any mitigation evidence.  Gunches also declined to accept responsibility during his allocution.  We find no error.

## III.  ABUSE OF DISCRETION REVIEW

**¶41**         Because Gunches committed the murder after August 1, 2002, we must review the jury's finding of aggravating circumstances and the imposition of a death sentence for abuse of discretion, A.R.S. § 13-756(A), viewing the facts in the light most favorable to sustaining the verdict, *State v. Naranjo*, 234 Ariz. 233, 249 ¶ 81, 321 P.3d 398, 414 (2014).  We must conduct this review even if, as here, the defendant does not argue that the jury's verdict was an abuse of discretion.  S*tate v. Morris*, 215 Ariz. 324, 340 ¶ 76, 160 P.3d 203, 219 (2007).  "A finding of aggravating circumstances or the imposition of a death sentence is not an abuse of discretion if 'there is any reasonable evidence in the record to sustain it.'"  *State v. Delahanty*, 226 Ariz. 502, 508 ¶ 36, 250 P.3d 1131, 1137 (2011) (quoting *Morris*, 215 Ariz. at 341 ¶ 77, 160 P.3d at 220).  Given the established aggravating circumstance under § 13-751(F)(2) based on Gunches's uncontested prior conviction, the jury did not abuse its discretion in determining that there was no mitigation sufficiently substantial to call for leniency.  *See* A.R.S. §§ 13-751(C), (E), -752(G).

## IV.  CONCLUSION

**¶42**         We affirm Gunches's death sentence.[2]

---

[2]     Stating that he wishes to preserve certain issues for federal review, Gunches lists twenty-six constitutional claims and previous decisions rejecting them.  We decline to revisit those claims.